RICE *vs.* CADE ET AL.

APPEAL FROM THE COURT OF THE FIFTH JUDICIAL *DISTRICT, THE*
JUDGE OF THE SIXTH PRESIDING.

Where the owner of slaves permits them to tow vessels, or work for themselves, and at times forbids them, if one is accidentally lost, whilst engaged in such employment, the person so employing them will not be liable to the owner for the value of the slave so lost.

So where a steamboat was wooding, and the slaves of a neighbor came on board, without its being shown that they were actually employed by the master or owner of the boat, and one of them was killed, accidentally, by the fly-wheel: *Held*, that the owners of the steamboat were not liable for the value of the slave thus lost.

This is an action against the defendants, Robert Cade and John Greig, as owners of the steamboat Two Friends, to render them liable for the loss of a negro man, who was killed on board, and to recover the sum of one thousand dollars for his value.

The plaintiff alleges that the defendants' boat, on her trip down from Vermilion bridge to New-Orleans, stopped at R.

Cade's landing, and, without his permission or consent, took on board a number of his slaves, who remained on board, with the permission of the captain and one of the owners of the boat, until she dropped down a short distance to a wood yard, for the purpose of wooding; that said slaves were employed, without his written permission or consent, in carrying in wood; that after the boat was done wooding, the engineer set the engine in motion, improperly and imprudently, before the said slaves had time to get out, and while they were running through the boat, to go out, one of them, named Arthur, was killed by the engine or fly-wheel, a sober and good slave, of the value of one thousand dollars. He further alleges, that the defendants are liable to pay him the value of said slave, lost through the carelessness and neglect of the engineer, because, by a law of the state, any master or owner of any ship, vessel or other water craft is prohibited from receiving on board, or permitting to remain on board, &c., any slave belonging to another person, otherwise shall be liable to the payment of the damages resulting from his violation of the law. They are liable, because they had no right to receive or permit said slave to remain on board, or employ him, without permission; and if found on board they should have dismissed him; and further, because the loss of the slave is a consequence of the illegal conduct and acts, either active or passive, of the owners and master of said boat: wherefore he prays judgment for one thousand dollars, the value of the slave thus lost.

The defendants pleaded a general denial, and that if said slave was killed on board said boat, they were ignorant of the facts, and are not bound in any manner for the loss.

Upon these pleadings and issues the cause was tried by the court.

G. Petrie, witness for plaintiff, and overseer of defendant, Cade, sworn, says, it was on a Sunday morning, the 2d March, 1834, that the steamboat Two Friends stopped at Mr. Cade's landing, and took on board a number of his (Cade's) slaves, Mr. Cade then on board; some of the plaintiff's also went on board. Mr. Cade was standing on

WESTERN DIST.
September, 1836.
━━━━━━━
RICE
vs.
CADE ET AL.
deck, and made no objections. There were eight or ten negroes who went on board, but he did not see the slave Arthur among the number. Capt. Curry, who commanded the boat, asked Mr. Cade if all those negroes were to go on board, who replied yes. Witness, with the negroes and Mr. Cade, all went down to the wood yard, which was about a mile and a half or two miles below the plantation. On stopping, Cade told witness to call his negroes, to help the boat to wood. There were three or four of the plaintiff's negroes who also helped to carry wood. They assisted until the quantity of wood required was carried on board. Mr. Cade and the captain were at the wood pile, and measured the wood. Witness was on shore when the accident happened to the negro of plaintiff who was killed. Another of plaintiff's negroes was on board when the boat was about putting off, and was with difficulty put on shore. Witness thinks the negro, at the time he was killed, was worth eight or nine hundred dollars.

Cross-examined. Witness states, that when the steamboat landed at Cade's plantation, there were a few white persons and a great many blacks. Cade told witness to call his (Cade's) hands to go down and help to wood. Did not understand that Rice's negroes, or any other person's, were to be sent down. Capt. Curry asked Cade if all those negroes (meaning those on shore) were to go on board. Cade answered, yes. Witness did not order any of them to go on board, and went himself to the wood yard. Did not perceive the negro, Arthur, on board. Did not superintend the carrying in of wood. Gave no orders to Cade's negroes to go on board; only Cade told him he wished all his hands to go and help wood. Witness called them all to the bank where the wood lay, and told them what Cade wanted with them, i. e., to wood the boat. Did not see Cade ordering or instructing Rice's negroes to do any work whatever. Never heard Cade say that he knew any of Rice's negroes were on board. Did not, at any time, see the negro, Arthur, before he was brought out, wounded. Has no doubt but that he would have been as apt to see Arthur as Mr. Cade himself.

Witness says Rice lives near (eight or ten arpents from) Cade; is very indulgent to his slaves, and not so strict as Cade in keeping his negroes at home on Sundays; says, when the boat came too, to wood, there were no negroes at the wood yard, on shore.

A. Lemere, witness for plaintiff, was at the wood yard, where the boat wooded; recognized two negroes of Rice's, William and John, carrying in wood. Did not see Cade.

H. Petrie, for same, said he was not present when the boat landed, but was there when the negroes were carrying in wood; saw two of Rice's negroes carrying in wood; is not sure he saw Arthur; it seems to him he did, but is not positive. Cade came and measured the wood; the negroes came and took the wood to the boat; cannot say, positively, Arthur was there; saw him after he was wounded.

Cross-examined. Says he did not see Cade command or order any of Rice's negroes; does not know where he was, or whether he was in a situation to have prevented the accident.

Question asked by the court. Witness says he saw a bottle, out of which the negroes drank; did not know what was in it; does not know who gave it to them.

Examination in chief. The boat pushed off directly; the wood was in. When they were pulling in the plank, saw some negroes on board; they seemed to be in a hurry; does not know whether they were warned or not; does not know where Cade was when they pushed off, but he was on board.

W. Kibbe, clerk of the boat, witness for defendant, says, while at Cade's landing, he heard Cade tell his overseer to send some of his negroes on board, to go down to the wood yard and assist in wooding. The negroes came on board, he thinks some five or six, and proceeded to the wood yard. After they were done wooding, and the negroes all gone on shore, as was supposed, and the boat was in the act of casting off, some one called out that one of Mr. Cade's negroes was killed. It proved to be one of Mr. Rice's negroes. Witness understood that the accident was caused by the negro being caught in the fly-wheel, when trying to make

his way out of the engine room, where he had been for some purpose unknown to the witness. As the captain and owners were not in the habit of employing slaves to work on the boat, without the consent of the owners, it was not supposed that there were any negroes on board, except Mr. Cade's, and, to witness's knowledge, there were no other negroes employed to work on the boat that day, or if there were, nothing was paid to them ; neither does he think the master or owners had any knowledge of the negro being on board until the accident happened. If there were any hands employed on board, witness was always called upon to pay them. At the time of the accident, the engine room was closely stowed with cotton and hides ; so much so, that it was difficult for a person to pass through without crawling over the bales.

Capt. Curry, who commanded the boat at the time of the accident, states, that he and Cade were standing on the boiler deck, at the plantation of the latter, when he (Cade) inquired how many hands were wanted ; witness says he answered about five or six. Cade then called to his overseer, who was standing on the bank, amongst his negroes, to send the number required, and that part or all of them came on board, to go to the wood pile. By the bayou, they had about a mile and a half to go, but there was a road by land much nearer. After landing at the wood pile, saw the overseer opposite to the boat, on shore, and a great number of negroes, men, women and children, on the bank, looking at the boat. Neither himself, Mr. Cade, or any other owner of the boat, he is satisfied, knew that any strange negro was on board.

Witness says he has made it a rule, for the last seven or eight years, from which he has not deviated, whether acting as captain or otherwise, never to employ or harbor any slave, in any manner whatever, without the consent of the owner, &c., and when found on board of any boat under his charge, without such consent, to commit the slave so found to the first prison on his route.

The evidence showed that Cade and Greig were the owners of the steamboat Two Friends.

The district judge rendered judgment in favor of the plaintiff, against the defendant, Cade, for the sum of eight hundred and fifty dollars, and discharged the other defendant. Cade appealed.

*Simon,* for the plaintiff, contended that the evidence showed that the slave in question was permitted to come on board the boat, and, in fact, he was employed in carrying wood, and this, too, without the permission of his master and owner, consequently the defendant is liable.

2. There is an express law of this state, prohibiting masters and owners of vessels from receiving on board, or permitting to remain on board, any slave belonging to another, without a written permission, and which makes them liable for all the damages that ensue, by allowing slaves to come on board in violation of the law. 1 *Moreau's Digest,* 377, 382, *section* 5.

*Brownson* and *Crow,* for the defendant.

*Martin, J.,* delivered the opinion of the court.

The defendant seeks the reversal of a judgment, which condemns him to pay the value of a slave of the plaintiff, killed on board of the defendant's steamboat.

It does not appear, from any part of the testimony, that this slave came on board with the defendant's knowledge or consent, although it may be inferred, from the evidence, that other slaves of the defendant did, as the affirmative answer which he gave to the captain of the boat, who asked whether all the slaves that were standing near it should be taken in, may seem to have included other negroes than those belonging to him.

In this hypothesis, (as it is not shown that the slave killed was near the boat at the time) it may be doubtful whether the answer would affect the defendant. The negroes who came on board were taken down the bayou, a distance of about a mile and a half, and employed in wooding. One of the plaintiff's witnesses deposes, that he *believes,* but is *not*

*positive,* that he saw the slave, Arthur, assisting in carrying wood.    We are without any other evidence of Arthur's having been on board, until the time when he came in contact with the fly-wheel, and was thereby killed.    If we reject the testimony of the witness who says he cannot swear, positively, we are then without the least tittle of evidence to support the assertion, that this slave came on board with the knowledge or consent of the defendant, Cade, one of the owners.    We think it inadmissible, and must conclude that the evidence is in favor of the defendants.

Where the owner of slaves permits them to tow vessels, or work for themselves, and at times forbids them, if one is accidentally lost whilst engaged in such employment, the person so employing them will not be liable to the owner for the value of the slave so lost.

In the case of Morgan's Syndics *vs.* Fiveash, 7 Martin, N. S., 410, and 8 Ibid., 588, this court held, that a planter, who at times permits his slaves to tow vessels, and at others forbids it, is not entitled to recover the value of one of them, who was lost in that way.    The permission to slaves, allowing them to work for other persons than their owners, may be often implied from the minuteness of the services, or the time at which they are rendered.    On the arrival of a stage or steamboat, a number of black boys crowd near it, to be employed in conveying trunks and baggage of the passengers and others therefrom.    The passengers who accept their services cannot be expected to loose time in inquiring whether the boy be a slave or a free person, and, in the former case, whether he has his owner's permission.    The law forbids the purchase of any thing from a slave, without a written permission from his master, yet, many times, the most correct of our citizens buy a melon, or other trifling article, without the production of this permit.    In such a case, the act is considered as justified by the maxim, *de minimis non curat lex,* or the proverb, *lo poco por nada se reputa.*    The *day* on which the services of slaves are rendered is thought to authorize the conclusion that they were impliedly permitted.    According to the provisions of law, slaves are entitled to the produce of their labor on Sunday; even the master is bound to remunerate them, if he employs them.    He, therefore, who does not require their services on that day, and does not retain them on his plantation, impliedly permits them to earn

money by their labor, and cannot complain of their being <span>WESTERN DIST.<br>*September*, 1836.</span> employed by his neighbors.

The testimony, in this case, shows the plaintiff to be <span>SEGOND<br>*vs.*<br>THOMAS.</span> indulgent to his slaves, in permitting them to go backward and forwards to his neighbors' plantations on Sunday; we are, therefore, not ready to say, if the case required it, that the evidence does not authorize the conclusion, that the slave, Arthur, had an implied permission from his master to work for himself. We do not wish to intimate, that a person employing the slave of another on Sunday, in dangerous work or occupation, as the breaking a wild horse by a slave <span>So, where a steamboat was wooding, and the</span> unaccustomed to such exercises, could protect himself under <span>slaves of a neighbor came on</span> such an implied permission. The absence of any legal <span>board, without</span> evidence, that the slave in question was employed in wood- <span>it's being shown that they were</span> ing, renders it unnecessary to inquire whether this be a <span>actually employ-</span> dangerous occupation or not. <span>ed by the master</span>

Upon the whole, the evidence authorizes us to conclude, <span>or owner of the boat, and one of</span> that the loss of the slave was occasioned by circumstances <span>them was killed,</span> purely accidental, for which the defendants are not liable, <span>accidentally, by the fly-wheel:</span> rather than resulting from any fault or negligence of theirs, <span>*Held*, that the owners of the</span> which would authorize a recovery. <span>steamboat were not liable for the value of the slave</span>

It is, therefore, ordered, adjudged and decreed, that the <span>thus lost.</span> judgment of the District Court be annulled, avoided and reversed, and that ours be for the defendant, with costs in both courts.